MULTNOMAH COUNTY,
a home rule subdivision of the
State of Oregon,
by and through its Tax Collector, Kathleen A. Tuneberg,
and its Tax Assessor, Robert Ellis,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE
(Hawaii T & S Enterprises, Inc.),
*Defendant,*

*and*

HAWAII T & S ENTERPRISES, INC.,
*Taxpayer / Intervenor,*

*and*

John A. and Lois ELORRIAGA,
*Intervenors.*

(TC 4282)

Oral argument on Plaintiffs', Taxpayer/Intervenor's, and Intervenors' motions for summary judgment was held November 16, 1998, in the courtroom of the Oregon Tax Court, Salem.

John S. Thomas, Assistant County Counsel, Multnomah County, argued the cause for Plaintiff (county).

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Dean N. Alterman, Kell, Alterman & Runstein, Portland, argued the cause for Taxpayer/Intervenor Hawaii T & S Enterprises, Inc. (Hawaii).

Michelle Humberstone, Miller, Nash, Weiner, Hager & Carlson, Portland, argued the cause for Intervenors John A. and Lois Elorriaga.

Decision for Intervenors rendered January 26, 1999.

**CARL N. BYERS, Judge.**

Plaintiffs (county) appeal from Defendant Department of Revenue's (the department) Opinion and Order holding that historic property shall be reclassified at its assessed value at the time of reapplication, rather than at its real market value. County claims that ORS 358.505[1] and subsequent legislation make it clear that real market value is to be used for the second-frozen assessment period. Taxpayers intervened and the matter was submitted to the court on cross motions for summary judgment.

## FACTS

Unidentified prior owners of the subject property had it classified and specially assessed as a historic property for a 15-year period ending June 30, 1996. Under ORS 358.505, the value is specially assessed or frozen for 15 years. Intervenor Hawaii T & S Enterprises, Inc. (Hawaii) purchased the property during this frozen-assessment period.[2]

By 1995, the Americans with Disabilities Act, and laws and standards concerning energy conservation and seismic safety, required significant additional investments in commercial properties. Acknowledging this, the legislature amended ORS 358.505 and provided for an additional 15-year special-assessment period for historic commercial properties. Hawaii applied for reclassification and special assessment for a second 15-year period effective beginning July 1, 1996. The county assessor approved the application for special assessment but determined that the taxable value, which would become the frozen value, should be the real market value of the property at the time of reapplication. Therefore, the assessor placed the 1995-96 real market value of $1,530,000 on the tax roll. Intervenors contend that the specially assessed or frozen value should be $391,900, the assessed value at the time of reapplication.

---

[1] Unless otherwise indicated, all references to the Oregon Revised Statutes are to 1995.

[2] Intervenors John and Lois Elorriaga purchased the property from Hawaii in July 1997 while this appeal was pending before the department.

## ISSUE

Is the specially assessed value for the second 15-year period to be the assessed value at the time of reapplication or the real market value at the time of reapplication?

## ANALYSIS

Beginning in 1975, the legislature declared that as a matter of policy, it is in the best interest of the state to preserve historic properties. It has since further declared that to the extent special assessment encourages the preservation of historic properties "it creates a positive partnership" between the public and the private owners. ORS 358.475.

■ Initially, if a property was classified as historic property and approved for special assessment, then the specially assessed value of the property for 15 years was "the assessed value of the property at the time application under ORS 358.485 was made." ORS 358.505(1) (1985). Inasmuch as ORS 308.232 required property to be assessed at 100 percent of its true cash value, the assessed value would have been the true cash value on the roll at the time the application was filed. The statute did not require the assessor to reappraise the property as of the time of application.

■ The 1995 Legislature made a number of changes to the historic-property statutes. Before 1995, a property classified as historic was not entitled to any other exemptions or special assessments, although it could obtain special historic property assessment more than once. *See* ORS 358.540 (1993). In 1995, those provisions were reversed. ORS 358.540(1) now provides that historic property "shall be" entitled to any other exemptions or special exemptions provided by law. However, ORS 358.540(2) provides that property that has received special assessment "for 15 years is not again eligible for special assessment under ORS 358.475 to 358.545." The only exception to the latter rule is that commercial property can "reapply under ORS 358.487 for one additional 15-year period of special assessment * * *."[3] ORS 358.540(3)(a).

---

[3] ORS 358.487 applies to applications made for tax years 1996 and later.

■ At the time Hawaii reapplied for special assessment, ORS 358.505(1)(b) clearly provided that:

"* * * the *county assessor shall,* for 15 consecutive assessment years after the date of the filing of the reapplication, *value the property* * * * *at the assessed value of the property at the time reapplication* under ORS 358.540(3) *was made.*" (Emphasis added.)

Under that language, if there was not a hiatus between the two 15-year periods, then the assessed value for the second period would be the same as that for the first period. That conclusion follows because the "assessed value" at the time of reapplication would have been the frozen assessed value for the prior period. If there had been a hiatus between the two periods of special assessment, then the assessed value could be either the real market value or some other specially assessed value.

That relatively clear administrative direction turned cloudy with the adoption of Measure 50 in 1997. That measure adopted Article XI, section 11, of the Oregon Constitution, imposing new limits on property taxes. For the tax year beginning July 1, 1997, Measure 50 imposed a new maximum assessed value equal to the property's 1995 real market value, less 10 percent. The maximum assessed value could not thereafter increase by more than 3 percent per year. Also, the property's assessed value could never exceed its real market value. Or Const, Art XI, § 11(1)(f).

■ In 1997, the legislature enacted implementing legislation establishing maximum assessed values for tax years after the 1997-98 tax year. ORS 308.146 provides that the maximum assessed value for such years is equal to the greater of 103 percent of the prior year's assessed value or 100 percent of the prior year's maximum assessed value. However, assessed value shall be the lesser of the maximum assessed value *or* the real market value. Thus, conceptually, Oregon now has assessed value, maximum assessed value, and real market value; all of which must be separately reflected on the assessment rolls. *See* ORS 308.215(1) (1997).

In responding to Measure 50, the 1997 Legislature amended or repealed over 225 sections of the Oregon Revised

Statutes. Although most of those amendments were effective July 1, 1997, some statutes specifically addressed past years.

■ ORS 358.505(1)(b) was one of those statutes amended. While it still provides that property is to be specially assessed at its assessed value as of the time reapplication was made, the legislature added the words "without any adjustment to value made under ORS 358.475 to 358.545 * * *." The purpose or intent of that additional language is not clear. ORS 358.475 to ORS 358.545 are the provisions that provide for classification and special assessment of historic property. None of those provisions particularly address, or are pointed toward, "adjusting" the value of property, particularly specially assessed property. County contends that this language evidences an intent to use the real market value as of the date of reapplication. However, that is not what the statute provides.

The situation was made even more unclear by the addition of ORS 358.507. That section contains three subsections, the first of which provides that if property is classified and specially assessed for the tax year beginning July 1, 1995, "notwithstanding 358.505" the maximum assessed value for July 1, 1997, is the assessed value as of July 1, 1995, less 10 percent. For each year thereafter, the assessed value is the lesser of 103 percent of maximum assessed value or the frozen value.

■ ■ Subsections (2) and (3) of ORS 358.507 (1997) provide:

"If property is first classified as historic property for the tax year beginning July 1, 1996, notwithstanding ORS 358.505, the property's frozen value under ORS 358.475 to 358.545 shall, for the tax year beginning July 1, 1997, and for all subsequent years for which the property is classified as historic property, equal the lesser of the property's maximum assessed value under ORS 308.146 and section 2, chapter 541, Oregon Laws 1997, or the property's assessed value under ORS 358.505.

"If property is reclassified as historic property under ORS 358.505(1)(b) for the tax year beginning July 1, 1996, the property shall be assessed as provided in subsection (2) of this section. The property's frozen value shall equal the

property's real market value (or lesser value, if ORS 358.540(1) is applicable) at the time application was made, without any adjustment to value under ORS 358.475 to 358.545."

The direction to assess the property "as provided in subsection (2)" cannot mean to calculate the frozen value as it is calculated in subsection (2) because the very next sentence specifically defines the frozen value. What the legislature must have intended is that assessed value shall not exceed the maximum assessed value. Because subsection (2) provides that frozen value shall be the lesser of the maximum assessed value or the frozen value under ORS 358.505, the direction must be to assess the property in such a way that the frozen value will be the lesser of assessed value or maximum assessed value.

Subsection (3) provides that the frozen value is to be the real market value at the time of "application." In making all of the changes and amendments to conform the statutes to Measure 50, the legislature has clearly distinguished between "application" and "reapplication." The word "application" refers to the first time the property is classified as historic property. It cannot refer to the real market value at the time of "reapplication" because, in the time and circumstances when the changes were made, real market value would usually exceed the maximum assessed value allowed under Measure 50.

In context, Oregon Laws 1997, chapter 693 made many amendments and changes to the Oregon Revised Statutes to conform to the requirements of the new Article XI, section 11, of the Oregon Constitution. For specially assessed historic property to be in conformity with Measure 50, the frozen value cannot exceed maximum assessed value. If property is assessed as provided in ORS 358.507(2), it would then be assessed at the lesser of maximum assessed value or the assessed value under ORS 358.505. In effect, the solution to this legislative semantic maze is as follows: Because ORS 308.232 provides that a property shall be assessed at its real market value, the real market value at the time of "application" would become the "frozen value" for the first 15-year period. When property is specially assessed for a second

15-year frozen period (without a hiatus between the two periods) the frozen value for the second period will be the same as for the first period unless that amount exceeds either maximum assessed value or real market value.

While the phrase in ORS 358.505(1)(b), "without any adjustment to value under ORS 358.475 to 358.545," is not clear, the legislature could not have intended to increase the specially assessed or frozen value over that provided by prior law. The whole point of amending ORS 358.505 and ORS 358.507 was to provide for lower than previous values in order to conform with the mandates of Measure 50.

In conclusion, the legislature did not intend to increase frozen values. In responding to changes made by Measure 50, newly classified historic property will have a frozen assessed value subject to the maximum assessed value limits of Measure 50. Property which is reclassified as historic property will have a frozen value for the second 15-year period that is the same as its assessed value when the reapplication was made, subject to the limits of Measure 50. If the frozen assessed value exceeds maximum assessed value or real market value, then it will be reduced to the lesser of those two values.

That construction makes it unnecessary to respond to Hawaii's arguments relative to the retroactive effect of the amendments and whether they are an unconstitutional breach of contract. The court finds that the assessed value for the subject property as of July 1, 1996, must be the assessed value at the time of reapplication, which was the real market value at the time of initial application or $391,900. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Intervenors' Motions for Summary Judgment are granted subject to the explanation contained above.