IN THE OREGON TAX COURT
REGULAR DIVISION

WALDO BLOCK PARTNERS,
Morton H. Zalutsky,
and Kenneth S. Klarquist, Jr.,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*
*and*

MULTNOMAH COUNTY,
*Intervenor-Defendant.*

(TC 4496)

Dean N. Alterman, Lane Powell Spears Lubersky, Portland, argued the cause for Plaintiffs (taxpayers).

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

John S. Thomas, Multnomah Assistant County Counsel, Portland, argued the cause for Intervenor (the county).

Decision for Defendant and Intervenor rendered April 18, 2002.

### CARL N. BYERS, Senior Judge.

Plaintiffs (taxpayers) appeal the 1999-2000 assessed value of their specially assessed historic property. This appeal arises from differing interpretations of the statutes providing for special assessment of historic properties. Because taxpayers' claims present only legal questions, the matter has been submitted to the court on cross-motions for summary judgment. The court has considered both the written and oral arguments of the parties.

## FACTS

The subject property is land and a commercial building in downtown Portland known as Waldo Block. It was designated as historic property in April 1982 and thereby became eligible for special assessment. As such, the assessed value of the property was frozen at $244,710 for the 15-year special assessment period beginning 1982-83 and ending with 1997-98. Prior to June 30, 1998, the owners applied for an additional 15-year special assessment. That application was approved on September 10, 1998, and the owners became entitled to special assessment for the tax years 1998-99 through 2012-13.

## ISSUES

(1)   Where commercial property that has been classified and specially assessed as historic property for a 15-year period ending June 30, 1998, is reclassified and qualifies for a second 15-year special assessment period beginning July 1, 1998, what value should be used as the specially assessed or frozen value for the second 15-year period?

(2)   What is the maximum assessed value (MAV) of such property?

## ANALYSIS

The legislature has a declared policy to preserve historic properties. It has implemented that policy by providing a financial incentive for owners to make repairs and improvements to preserve their historic properties. ORS 358.475.[1] The incentive provided is freezing the assessed value for a 15-year period. ORS 358.505(1)(a). By freezing the assessed value, any increase in value due to repairs or improvements made to preserve the historic property will escape property taxation until the end of the 15-year period. *Id.*

■ Originally, only one 15-year special assessment period was allowed for a property. However, the legislature determined that historic *commercial* property was subjected to additional expenses due to code requirements for energy conservation, seismic improvements, and the Americans

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1997.

with Disabilities Act (ADA). ORS 358.540(3). Therefore, it granted an additional, or second, 15-year special assessment period to provide an incentive for owners to make mandated improvements and still retain the character of their historic commercial properties. ORS 358.540(3)(a).

The dispute between the parties arises because the statutory language is less than clear, which is understandable in light of its legislative history. In 1995, the legislature enacted legislation providing the second 15-year special assessment for commercial property. In November 1996, initiative Measure 47 passed, amending the constitution to limit property taxes. The 1997 legislature found that initiative unworkable and referred Measure 50 to the people to replace it. In the May 1997 election, the public adopted Measure 50; thereby replacing Measure 47 with Article XI, section 11, of the Oregon Constitution. Those amendments to the constitution adopted a concept of MAV and limited the rates of property taxes that could be imposed by taxing districts. Because Measure 50 passed late in the legislative session, the 1997 legislature had little time to prepare implementing legislation. This case is somewhat complicated not only because the statutory scheme is not clear but also because the court is required to determine two separate values: the frozen value and the MAV.

The legislature has provided that the MAV of property qualified for special assessment is determined under the law providing for special assessment. *See* ORS 308.146(4). In this case, the law providing for special assessment of historic properties is ORS chapter 358. On the other hand, where property that has been specially assessed is disqualified, the MAV is to be determined under ORS chapter 308.[2]

---

[2] ORS 308.156(4) provides:

"(a) If property was subject to exemption, partial exemption or special assessment as of the January 1 assessment date of the preceding assessment year and is disqualified from exemption, partial exemption or special assessment as of the January 1 of the current assessment year, the property's maximum assessed value shall be established under this section.

"(b) If property described in this subsection is eligible for a different type or exemption, partial exemption or special assessment as of January 1 of the current assessment year, the property's maximum assessed value shall be established under the provision granting the partial exemption or special assessment."

*Frozen Value*

ORS 358.505 provides for the special assessment of historic properties. ORS 358.505(1)(a) of that section provides for the special assessment of property for the first 15-year period and subsection (1)(b) provides for special assessment of property that qualifies for the second 15-year period. ORS 358.505(1)(b) states:

> "If a reapplication for classification and special assessment filed pursuant to ORS 358.540(3) is approved under ORS 358.490, the county assessor shall, for 15 consecutive assessment years after the date of the filing of the reapplication, value the property that was the subject of the reapplication at the assessed value of the property, without any adjustment to value made under ORS 358.475 to 358.545, at the time reapplication under ORS 358.540(3) was made."

The direction to use "assessed value * * * without any adjustment to value made under ORS 358.475 to 358.545" is ambiguous. It could mean, as Defendant Department of Revenue (the department) and Intervenor Multnomah County (the county) contend, that the property is to be valued at its real market value (RMV) as if it had never been specially assessed as historic property. However, by using the term "assessed value," the legislature could have meant the assessed value on the roll, which was the prior frozen value. Therefore, it could mean that the property is to be valued without adjusting the frozen value at the time reapplication is made. Finally, it could also be referring to the nonspecially assessed value determined by the assessor as directed by ORS 358.505(3), which appears to be for record-keeping purposes in order to calculate additional taxes if the property becomes disqualified. *See* ORS 358.525.

The department contends that the statute's legislative history clearly reflects an intent to update the assessed value of the property for purposes of the second 15-year special assessment period. That would capture and tax the value of improvements made during the first 15-year period. Therefore, the only value to escape taxation in the second 15-year period would be appreciation and the value of improvements made during that period.

Taxpayers concede that "the legislative history submitted by defendants tends to support defendants' argument that the 1997 legislature did not intend to freeze the value of historic properties for 30 years." However, taxpayers contend that the statute is not ambiguous and therefore the court may not consider the legislative history. The court disagrees.

As indicated above, the statute is ambiguous. Although the legislative history does clarify the legislature's intent to update the value, the committee discussions were clouded with confusion due to the uncertainty of how Measure 50 impacted special assessment for historic properties. In particular, there were questions in the committee members' minds with regard to the language used in ORS 358.505(1)(b).[3]

■   In *Multnomah County v. Dept. of Rev.*, 15 OTR 5 (1999), this court considered the same statute without the benefit of considering the legislative history and came to the conclusion taxpayers now seek. However, upon re-examination in light of that legislative history, the court finds its conclusion in that case was wrong. The court now concludes that the words "assessed value * * * without any adjustment to value made under ORS 358.475 to ORS 358.545" were intended to mean RMV. That conclusion is consistent with ORS 358.507(3), which applies to property reclassified as historic property beginning July 1, 1996. That section expressly provides that "[t]he property's frozen value shall equal the property's real market value * * * at the time application was made, without any adjustment to value under ORS 358.475 to 358.545." Therefore, the court concludes that the subject property's specially assessed (frozen) value for the 15-year period beginning July 1, 1999, is the RMV of the property at the time taxpayers applied for reclassification.

*Maximum Assessed Value*

The determination of MAV under ORS chapter 358 is more problematic. ORS 358.507 was enacted by the 1997 legislature to conform the special assessment of historic properties with the requirements of MAV as provided by Article XI, section 11, of the Oregon Constitution. ORS 358.507 has

---

[3] Minutes, Senate Revenue Committee, SB 1103, May 22, 1997, 3-50.

three subsections. The court will examine each with respect to their meaning and application to the subject property.

■      ORS 358.507(1) provides:

"If property was classified and assessed as historic property for the tax year beginning July 1, 1995, and continues to be classified and assessed as historic property, notwithstanding ORS 358.505:

"(a)   The property's maximum assessed value for the tax year beginning July 1, 1997, shall equal the property's assessed value for the tax year beginning July 1, 1995, reduced by 10 percent.

"(b)   For tax years beginning on or after July 1, 1998, the property's assessed value shall equal the lesser of 103 percent of the property's maximum assessed value for the preceding assessment year or the property's frozen value under ORS 358.475 to 358.545."

Taxpayers contend that provision applies to the subject as of July 1, 1998. The department contends that it does not. It is clear that the subject property was classified and assessed as historic property on July 1, 1995, and continued to be so on July 1, 1997. Therefore, as of July 1, 1997, the property's MAV was determined under subsection (1) of ORS 358.507. That MAV, of course, would have been equal to the subject property's special assessed or frozen value as of July 1, 1995, less 10 percent. If the property continued to be classified and assessed as historic property, ORS 358.507(1)(b) provides that for the 1998 and following tax years, the MAV would be the lesser of 103 percent of the prior year's assessed value or the property's frozen value. That provision recognizes that the frozen value remains the same but the MAV can increase each year. Therefore, eventually the frozen value may become the assessed value every year.

■      The department contends that ORS 358.507(1)(b) does not apply to the subject property as of July 1, 1998, because the subject property did not "continue" to be classified and assessed as historic property. Rather, the subject property became disqualified from special assessment at the end of the first 15-year period, which expired July 30, 1998. The subject property was reclassified and reassessed as historic property on July 1, 1998, only by virtue of taxpayers

reapplying and requalifying for such. Therefore, the subject property's qualification for special assessment on July 1, 1998, was not a result of continuing to qualify as intended by ORS 358.507(1). The court agrees.

Just as the legislature did not intend to continue the same frozen value from the first 15-year period to the second, the MAV during the first assessment period does not carry over to the second period. The constitution clearly anticipates that when the taxable status of property changes, either becoming disqualified for special assessment or becoming "newly eligible" for special assessment, a new MAV is established for the property. If the subject property had not qualified for the second special assessment period, the MAV from the first period would not continue to be calculated under ORS 358.507(1). Because ORS 358.505(1)(b) provides for a separate and distinct special assessment from that provided by ORS 358.505(1)(a), property qualifying for the second special assessment period becomes newly eligible for special assessment. Therefore, ORS 358.507(1) cannot apply to the subject property as of July 1, 1998.

Subsection (2) of ORS 358.507 provides:

> "If property is first classified as historic property for the tax year beginning July 1, 1996, notwithstanding ORS 358.505, the property's **frozen value** under ORS 358.475 to 358.545 shall, for the tax year beginning July 1, 1997, and for all subsequent years for which the property is classified as historic property, equal the lesser of the property's maximum assessed value under ORS 308.146 and section 2, chapter 541, Oregon Laws 1997, or the property's assessed value under ORS 358.505."

(Emphasis added.) Obviously, that provision is not applicable to the subject property because the subject property was not "first classified as historic property for the tax year beginning July 1, 1996." The subject property was first classified as historic property for the tax year beginning July 1, 1982. It first qualified for the second 15-year period for the tax year beginning July 1, 1998. Therefore, the statute, by its terms, does not apply to the subject property. Curiously, the statute addresses only frozen value, not MAV or assessed value. The reason for this may be that the first year frozen value and the

MAV will be so similar, if not exactly the same, that the frozen value will always be lower than the MAV.

■        ORS 358.507(3) provides:

> "If property is reclassified as historic property under ORS 358.505(1)(b) for the tax year beginning July 1, 1996, the property shall be assessed as provided in subsection (2) of this section. The property's frozen value shall equal the property's real market value (or lesser value, if ORS 358.540(1) is applicable) at the time application was made, without any adjustment to value under ORS 358.475 to 358.545."

That provision does not apply to the subject property because although the subject property was reclassified, it was not reclassified for the tax year beginning July 1, 1996. The specific phrasing used by the legislature limits the statute's application to the 1996 tax year. If the statute read for tax "years," or if it read beginning July 1, 1996, "and thereafter," it would apply. However, so construing the statute requires the court to add a letter or words, which the court may not do. ORS 174.010.

Even if ORS 358.507(3) were applied to the subject property, its inherent inconsistency merely adds to the confusion. That is, it clearly provides that the frozen value of the reclassified property is its RMV at the time of reapplication.[4] Although that determination is consistent with the language of ORS 358.505(b), the subsection does not provide for a MAV. It simply indicates that property so described "shall be assessed as provided in subsection (2)." As noted, subsection (2) does not provide for a MAV or assessed value. Rather, it provides for determination of a frozen value. Consequently, applying subsection (3) results in assessing the reclassified property at a value calculated under subsection (2) while being assigned a different "frozen" value under subsection (3). Although that may be one method of determining assessed value, subsection (3) does not indicate that the "assessed value" constitutes a MAV.

■        In summary, although the constitution requires all property to have a MAV, the court is unable to find a statute

---

[4] Subject to one possible exception not applicable here.

that provides for the calculation of a MAV for the subject property as of July 1, 1998. ORS 308.146(4) indicates that for partially exempt and specially assessed property, the MAV will be provided by the laws granting the special assessment. None of the laws granting the special assessment for historic property establish a MAV for the subject property.

The court notes that this problem was solved by the 2001 legislature for tax years 2002 and later. *See* Or Laws 2001, ch 540, § 8. In doing so, the legislature repealed ORS 358.507 effective July 1, 2002. Regrettably, the legislature did not see fit to address properties falling into the category of the subject property; that is, properties that qualified for reclassification after July 1, 1996.

■    In order for this case and the law to conform with the requirements of Article XI, section 11, of the Oregon Constitution the court must determine a MAV for the subject property without any specific statutory direction. The court concludes that the subject property as of July 1, 1998, was property that was "newly eligible" for special assessment within the meaning of Article XI, section 11(2), of the Oregon Constitution. Therefore, the MAV for the subject property must be calculated by using a ratio of average MAV divided by average RMV for property in the same area and of the same class (historic property). Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant's and Intervenor's motions for summary judgment are granted, and

IT IS FURTHER ORDERED that within 20 days from the date hereof, Defendant and Intervenor will calculate a MAV consistent with this order and submit a proposed judgment determining a MAV for the subject property for the tax year beginning July 1, 1998, to the court with a copy to Plaintiffs. Plaintiffs shall submit any objections to the proposed judgment with any alternative calculations to the court

within 10 days after receiving the calculations from Defendant and Intervenor. Thereafter, the court shall enter a judgment based on its determination of a MAV and the appropriate frozen value. Costs to neither party.