I. INTRODUCTION
This matter comes before the court on a Motion for Reconsideration of the court's earlier opinion in this case,Dept. of Rev. v. Butte Creek Associates I, 19 OTR 1 (2006) (Butte Creek I), filed by Plaintiff (the department) under Tax Court Rule 80. Defendant (taxpayer) filed a response and oral argument was held on the matter.
 II. FACTS
In Butte Creek I, the court considered the proper way to determine the specially assessed value (SAV) of a low-income housing property under ORS 308.712(1)(a).[1] In its motion, the department does not challenge any part of the court's opinion except the court's holding that the effective tax rate for taxpayer's property, as described in OAR 150-308.712(3)(h)(C),[2] is 1.7%. See Butte Creek I,19 OTR at 16-18. That rate, as stated in the court's original opinion, was derived by dividing the amount of taxes billed in Jackson County (the county) for tax year 2002-03 by the assessed value (AV) of all property in the county. Id. The department argues, as it did before, that the effective tax rate, for purposes of determining the SAV of taxpayer's property, is not 1.7%, but rather 1.39%. That value is derived from multiplying the nominal tax rate of 1.7% by the stipulated changed property ratio (CPR) of .82. Taxpayer urges the court to adhere to its prior holding.
 III. ISSUE
Under ORS 308.712(1)(a) and OAR 150-308.712(3)(h)(C), what is the proper method of calculating the effective tax rate for taxpayer's property? *Page 113 
 IV. ANALYSIS
In Butte Creek I, the court noted that the phrase "effective tax rate" is not located in ORS 308.712(1)(a), but rather in OAR 150-308.712(3)(h)(C), which states: "To the selected [capitalization] rate, add the effective property tax rate for the code area where the property is located. This is the overall rate to use for capitalization." 19 OTR at 15. The court then described the parties' dispute over the phrase as one focused on interpretation, concluding that "the court must uphold the department's interpretation of OAR 150-308.712(3)(h)(C) so long as that interpretation is plausible and not inconsistent with applicable law." Id. at 16. Ultimately, the court concluded that the department's proffered method of calculating the effective tax rate, and its corresponding rate of 1.39%, was implausible, and held that the proper method of calculating the effective tax rate, advocated by taxpayer, led to a rate of 1.7%.Id. at 18. The court now reexamines that conclusion.
As the court stated in Butte Creek I,
 "The purpose of adding the effective tax rate to the capitalization rate is to account for the fact that property taxes are not included in the NOI stipulated to by the parties. That is because the goal of discovering the SAV is to determine the amount of property taxes owed on the property. It is, of course, impossible to factor property taxes into the NOI without knowing the amount of those taxes. Nonetheless, property taxes must be included in the valuation somewhere because they reduce the property's income. With that background in mind, it must be remembered that properties in Oregon are not generally taxed on their [real market value (RMV)], or even on their SAV, but on their AV. Accordingly, as both parties admit, some adjustment must be made to the millage rate, if it is calculated in terms of RMV or SAV, to account for the difference between RMV and SAV, on the one hand, and AV on the other hand."
Id. at 15-16 (citations omitted).
The court then described "two plausible ways of making the adjustment necessitated by Measure 50." Id. at 16. *Page 114 
 "One method would be to calculate a tax rate by dividing the tax collector's RMV into the amount of taxes billed for the tax year. That tax rate would then need to be adjusted in order to achieve the effective tax rate, for instance by multiplying it by the CPR. A second method would be to calculate the effective tax rate directly by dividing the tax collector's AV, and not the RMV, into the amount of taxes billed for the tax year. That approach sidesteps the need for an additional adjustment because it already accounts for the Measure 50-created difference between RMV and AV, the same difference reflected in the CPR."
Id. at 16-17 (citation and footnote omitted).
The department argues that the court erred in describing those two methods for making the Measure 50 adjustment. Specifically, the department contends that the court mixed up the two methods, and that a tax rate calculated with respect to RMV would not
need a CPR adjustment, but that a tax rate calculated with respect to AV, as the 1.7% rate in this case was, would need such an adjustment.
1-5. The court agrees with the department that its earlier opinion was incorrect in this regard. In explaining why, the court finds it helpful to discuss in some detail the effects Measure 50 wrought on Oregon's property tax system. Before Measure 50, real property in Oregon was taxed based on its RMV.Hope Village, Inc. v. Dept. of Rev., 17 OTR 370, 376 (2004). After Measure 50, real property in Oregon is taxed based on a different regime. See id. (explaining the new regime). In short, under the Measure 50 regime, two figures control property taxation: RMV and MAV. The lower of those two figures is the AV of a property, its basis for taxation. ORS 308.232; ORS308.146(2). RMV is measured today basically in the same way that it was measured before Measure 50, according to market trends and traditional methods of valuation. See ORS 308.205 (defining RMV). MAV, however, is a different matter; it is a concept newly created and defined by Measure 50. Measure 50 provided that every property in Oregon would have an initial MAV for tax year 1997-98 that equaled 90% of its RMV for tax year 1995-96. Or Const, Art XI, § 11(1)(a). For all subsequent tax years, a property's MAV would not increase by more than three percent. Or Const, Art XI, § 11(1)(b). Whereas a property's RMV rises and falls with *Page 115 
market trends, its MAV generally increases slowly and steadily from a specially designated starting point, although it may at times remain flat. See ORS 308.146(1) (defining MAV). The difference between RMV and MAV can generally be captured by the CPR, at least in aggregate terms. See ORS 308.153(1)(b) (defining CPR as "the ratio, not greater than 1.00, of the average [MAV] over the average [RMV] for the assessment year").
6-9. Measure 50 also mandated that any special assessment statutes the legislature might craft be so crafted that they reflect the principles embodied in the concepts of RMV and MAV. Or Const, Art XI, § 11(2); see also Waldo Block Partners v.Dept. of Rev., 16 OTR 33, 41-42 (2002) (so stating). Accordingly, the legislature, in crafting the special assessment statutes for low-income housing properties, ORS 308.701 to308.724, provided that such properties would be taxed at the lower of their RMV, SAV, or maximum specially assessed value (MSAV). ORS 308.707(4). The provision that low-income housing properties must be taxed on their RMV, if that is less than their SAV and MSAV, can be considered a codification of Measure 50's command that "[e]ach property's [AV] shall not exceed the property's [RMV]." Or Const, Art XI, § 11(1)(f). Beyond that, ORS308.707(4) can be seen as embodying the RMV/MAV concept created by Measure 50. In that instance, SAV is a proxy for RMV and MSAV a proxy for MAV. The SAV of a low-income housing property is calculated according to a particular method prescribed by statute, ORS 308.712, just as the RMV of a property not subject to special assessment is calculated according to market trends.See ORS 308.205 (defining RMV). Similarly, the MSAV of a low-income housing property is calculated in a manner comparable to the MAV of a typical property. To establish an initial MSAV, ORS 308.707(3)(a) states that, in the first year of special assessment, a low-income housing property's MSAV must equal the product of its SAV and the applicable CPR.[3] That step can be seen as an approximation of the Measure 50 *Page 116 
mandate that each property's initial MAV equal 90% of its RMV for tax year 1995-96. Then, for all years after the first, just as a typical property's MAV is equal to the greater of its MAV from the prior year or 103% of its AV from the prior year, ORS308.146(1), the MSAV of a low-income housing property is equal to the greater of its MSAV from the prior year or 103% of its AV from the prior year. ORS 308.707(3)(b).
10. That background is important to the court's resolution of this case because it explains the change in the court's ultimate conclusion. Because this is the first tax year in which taxpayer's property is subject to special assessment under ORS308.701 to 308.724, the property's SAV cannot be the basis for taxation if the CPR is less than 1.00. Here, the CPR is stipulated to be .82. Accordingly, RMV aside, the AV of taxpayer's property for the tax year at issue will equal its MSAV, determined by multiplying its SAV by the CPR. ORS308.707(3)(a); ORS 308.707(4). In other words, because the calculation of the initial MSAV of taxpayer's property must be made with reference to the CPR, that calculation provides the necessary Measure 50 adjustment described by the court in its previous opinion. Consequently, in calculating the SAV of taxpayer's property for the first year of special assessment, no adjustment should be made on account of Measure 50.
11. The foregoing analysis shows that the court inverted its description of two plausible methods of determining the effective tax rate of taxpayer's property. On the one hand, where a millage rate is calculated with reference to RMV, the effective tax rate is the millage rate; SAV, in this instance, is a proxy for RMV. The calculation of MSAV required by ORS 308.707(3)(a) (multiplying SAV by the CPR, which in this case is less than 1.00) reflects the fact that taxpayer's property will not be taxed based on its SAV in the first year of special assessment, but rather on its MSAV (again, RMV aside). That last step produces the adjustment mandated by Measure 50.
12. On the other hand, a millage rate that is calculated with reference to AV, as the 1.7% rate in this case was, already reflects a Measure 50 adjustment. To then multiply the CPR by an SAV calculated based on that adjusted millage *Page 117 
rate would be to adjust for Measure 50 twice. That is unreasonable. Instead, a millage rate calculated with reference to AV must be multiplied by the CPR to eliminate the Measure 50 adjustment inherently contained in the millage rate. The calculation proceeds as follows. The AV of the property in the relevant area is the denominator of the millage rate equation, and the total taxes billed in that area is the numerator. The AV figure is based on MAV, which is less than RMV, as evidenced by a CPR of less than 1.00. More specifically, the AV, being based on MAV, can be approximated as the product of the CPR and RMV that is the inherent Measure 50 adjustment reflected in the AV-based millage rate. Multiplying a millage rate calculated with reference to AV, then, by the CPR cancels out the CPR from the equation, eliminating the Measure 50 adjustment and leaving a millage rate calculated with reference to RMV or its proxy, SAV. That, as shown above, is the correct millage rate to use in calculating the SAV of a low-income housing property, at least in the first year of special assessment, because the ultimate calculation of MSAV will produce the necessary Measure 50 adjustment.
As noted, the parties in this case stipulated to a millage rate of 1.7%, calculated with reference to AV. That millage rate must be multiplied by the CPR of .82 to achieve the effective tax rate described by OAR 150-308.712(3)(h)(C), which is 1.39%. Consequently, the court must uphold the department's interpretation of OAR 150-308.712(3)(h)(C) as plausible. The court wishes, however, to stress its limited holding in this case. Nothing is at issue in this case, on reconsideration, other than the proper method of calculating the effective tax rate for taxpayer's property for tax year 2002-03, the first year for which it is under special assessment under ORS 308.701 to308.724. The court expresses no opinion on whether the method of calculating the effective tax rate for taxpayer's property for subsequent tax years would be the same or what may be the appropriate analysis for property that is subject to special assessment under a different scheme or property that is not subject to special assessment.
Having concluded that the correct effective tax rate for taxpayer's property for tax year 2002-03 is 1.39%, the court must use that figure to determine the correct SAV of taxpayer's property. To do so, the court must first add the *Page 118 
effective tax rate (1.39%) to the capitalization rate, which the court earlier determined to be 11.367%. OAR 150-308.712(3)(h)(C);Butte Creek I, 19 OTR at 15. The result of that calculation is 12.757%. That figure must, in turn, be divided into taxpayer's stipulated net operating income (NOI) of $39,568, id. at 18, to determine taxpayer's unadjusted SAV. OAR 150-308.712(3)(h)(D). The result of that calculation is an unadjusted SAV of $310,167. Lastly, from that figure, the court must subtract the stipulated value of taxpayer's personal property ($10,000), Butte Creek I,19 OTR at 18, to achieve the correct SAV of taxpayer's property. OAR 150-308.712(3)(a)(A). The result of that last calculation is that the correct SAV of taxpayer's property is $300,167, not $292,808, as the court previously held. Butte Creek I,19 OTR at 18.
 V. CONCLUSION
Based on the foregoing reasons, the court concludes that the proper effective tax rate for taxpayer's property for tax year 2002-03 is 1.39%, not 1.7%. Accordingly, the court finds that the SAV of taxpayer's property under ORS 308.712(1)(a) is $300,167, not $292,808. Now, therefore,
IT IS ORDERED that Plaintiff's Motion for Reconsideration is granted; and
IT IS FURTHER ORDERED that the specially assessed value of Defendant's property under ORS 308.712(1)(a) is $300,167, not $292,808 as stated in the court's Opinion entered April 26, 2006.
Costs to neither party.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2001 edition.
[2] All references to the Oregon Administrative Rules (OAR) are to the current edition. Wilsonville Heights Assoc., Ltd. v.Dept. of Rev., 339 Or 462, 470 n 8, 122 P3d 499 (2005).
[3] As noted in the court's original opinion, ORS 308.707(3)(a) does not mandate the use of a CPR. Butte Creek I, 19 OTR at 17
n 14. Nonetheless, for purposes of clarity only, the court refers in this case to "the ratio, not greater than 1.00, of the average [MAV] to the average [RMV] of property in the same area and property class as the specially assessed property," ORS308.707(3)(a), as the CPR. *Page 119